Thomas versus Loretta Lynch, Attorney General. Good morning, your honors. If it please the court, my name is Rhonda Gelfman. I represent Pierre Thomas in his petition for review from a decision from the BIA. At this time I'd like to reserve three minutes for rebuttal. You may. Thank you. This case is about a United States citizen fighting to come home to his American family. All his family members are United States citizens who are here in the courtroom. His mother, his two sisters, his brother. He also has two American citizens, children. Now late Friday afternoon, the government files supplemental authorities stating that this appeal now is moot. What she doesn't, what the government doesn't realize, because she wasn't there, but I was, in the Southern District of Florida, Mr. Thomas took an Alford plea. It was a plea of convenience. He did not plea out of guilt. For the spirit of judicial autonomy, we moved the case along. The judge wanted the docket to move along and we took the Alford plea. He did not plead guilty to anything. Now, he did... Are you going to file a letter in response? Excuse me? Are you going to address this in a responding 28-J letter? We can. We will supplement it. Now this is a first impression for this court. And what the immigration judge in Boston did is use the matter of Mizuzu to hold that Mr. Thomas is not a United States citizen. In my opinion, what's good for the goose is good for the gander. Mr. Thomas gets deported and four months later, matter of Mizuzu is overturned with Mizuzu versus Holder. And in that case, the Second Circuit has a very well-reasoned opinion. It was an in-depth analysis regarding the canons of statutory construction, which stated that people do not have to live permanently in the United States in order to be a green card holder, have permanent residency. There are crewmen, there are students, there are ambassadors, consular officers, and their family members can also reside permanently in the United States with actually have lawful permanent residence. Now, Congress intended to have the plain meaning of the statute, 1432A5, read with two separate distinctive interpretations. In 1432A5, when a parent naturalizes, their child, who is under the age of 18, can become an automatic citizen. That's the first clause. The second clause says, or thereafter begins to permanently reside in the United States. That's the clause that applies to Mr. Thomas. That's how Mr. Thomas is a United States citizen. He was living permanently in the United States since the age of five. His mother filed an I-130, a petition for alien relative, as well as an I-817 under the Family Unity Program. That I-817 gave him legal status from October 1995 until October 1997. Now, Mr. Thomas' mother filed an N-400 for naturalization. She became a citizen while Mr. Thomas was 17 years old. He was residing in the United States. Nothing else had to happen. There were no more files, applications that had to be filed. He automatically retained derivative status once his mother became naturalized when he was still 17 years old. But how do you address the timing issue in that there was a prior final adjudication that he was not a U.S. citizen? And you're asking us now, in the context of this proceeding, to effectively revisit that determination? Absolutely. And what hook do we have to do that? And how would that hook then not mean that we could revisit this 20 times in a row? Right. The fact that the immigration judge, Judge Stephen Day, used that precedent law with Maddow and Azuzu, he used that and said, I'm looking at this case. This case says that he is not a United States citizen. I have no other authority to say he's a United States citizen. Mr. Thomas needs to be deported. Let me ask it more specifically. Yes. Suppose we were to rule against you. We'd take the case on the merits but decide. I'm not saying that's what we're going to do. Suppose we were. And then three years from now, he was apprehended of unlegal reentry. And then there was a proceeding then. Would you be able to raise in that proceeding again the question of whether he's a U.S. citizen? That's what we did. He reentered. So you could keep doing that every time he reenters. In this particular case, the facts are identical to Azuzu versus Holder. And the fact that the immigration judge used Maddow and Azuzu, we went ahead and filed a motion to reopen to the judge. Judge didn't want to hear it. We then, within 30 days, filed the appeal with the BIA. It is now ripe for him to come into the United States. Stone versus INS won't allow Mr. Thomas to have his day in court if he's deported. You have to wait until he comes in to make this case live again. So that's what he did. The BIA, the government, they don't have authority to go ahead and say, okay, Mr. Thomas, the law changed in your favor. We're going to have you come back now because we realize you're a United States citizen. The government just won't do it. So what Mr. Thomas had to do is come into the United States to make this live again. And that's what he did. And that was the only thing he could do in order for him, for your honors, to realize he's a citizen of the United States. Was the motion to reopen filed in a timely manner? It was filed only when he arrived in the United States. There's a time limit under the statute. Maybe it's subject to equitable tolling. But it was filed after the time limit had run. Is that right? We contend that no. Because this is a case of first impression that once he arrives in the United States, that's when it started again. You're saying tolling. That's an equitable tolling argument. That's a constitutional question regarding his citizenship that this court must hear. That can't arise in the Court of Appeals. If we're reviewing an agency decision, it was a motion to reopen filed. There's a time limit for when you have to file a motion to reopen. As I understand it, this was filed after that time period had run. Yes. One way that we can sometimes try and deal with that is they say, but equitable tolling should have applied. But this deals with the constitutional issue. I see. So one argument is you don't have to follow that time limit. Let's say I disagreed with that. I understand that argument, that there's just no time limit can apply to such a claim. But then second and more conventional argument is, but equitable tolling can apply to a time limit. Yes. Was an equitable tolling argument raised below? The BIA didn't want to consider. That's not what I asked. In your filings, did you present an equitable tolling argument to the immigration courts? We did in our brief. To the IJ and then to the BIA? To the IJ, I don't remember if we did the equitable tolling. All we know is that as soon as he landed in the United States, we felt that the issue was ripe again, that he now reentered new standards, new law, the same law that was applied to the immigration judge. And we believe that it's current that he is eligible to have this case heard in the first district. You need to help us, but it's not really relevant what you felt or what you believe. I understand. Is there anything in the record that we could point to that would suggest that a reviewable equitable tolling issue was put before the BIA? He exhausted previously his available remedies prior to his deportation. He went ahead, he filed the appeal with the BIA. The BIA denied his request. There is no requirement for him to go to the First Circuit at that point. He exhausted all his remedies at the time. You've reserved three minutes. I see my time is up. Good afternoon. May it please the Court. My name is Linda Chang and I represent the Attorney General. This Court should deny the petition for review upon a plain reading of the statute, finding that the petitioner failed to derive citizenship under former 1432. Before you get into the merits of that, which you did in your brief, as far as I can tell the government makes no argument that this is time barred? Correct. Because you don't treat it as time barred? No, we do not. Under 1252B5. No, no, not the jurisdictional argument. You're not making any argument that this is time barred. You just want us to cite it on the merits. Correct. To the extent that the merits can be reviewed because we do also argue that collateral estoppel precludes his citizenship claim. What about the nature of the plea? Counsel has told us it was an Alfred plea, therefore collateral estoppel does not apply. To my knowledge, that was not true, and I don't see that on the docket. However, it may be the fact. I was not privy to such information, except from what I could get from the docket and conversations with the AUSA. I'm just not quite understanding the government's position here. The BIA never addressed the merits of the argument post the Second Circuit's decision, correct? Correct. Okay. And you're saying the reason that the BIA gave for that was that it was time barred? Correct. And you're saying we should just treat it as if it wasn't time barred? Yes. Okay. So what should we do then? We're supposed to be reviewing the BIA's analysis. We could just, I guess, decide it completely on our own. But another possibility would be to give it back to the BIA for them to consider it in light of the Second Circuit decision? That is a possibility. However, we also contend that the Second Circuit's decision is not binding on this court, and therefore the court should still defer to Maduro. But as the case comes to us, we don't have any BIA view about what they make of the Second Circuit's extensive analysis of the legislative history, et cetera. This is true only because of the way that this case has come up. Petitioner has filed the untimely motion for review as a vehicle to get review in this court. As you pointed out, it was very untimely after the merits decision. But you think that's appropriate that they did it that way? Because you're not challenging the timeliness of the filing? No, we're not. Under the circumstance, citizenship claims are special jurisdiction. Okay. So what do we do? The BIA says, I'm denying this because it's untimely. They appeal, and you tell us, for purposes of appeal, I'm waiving the timeliness issue, which was the grounds for the BIA decision. We're now to sit around and mind read what the BIA would have done had it not seen a timeliness problem. Why wouldn't we just send it back to the BIA? I understand the dilemma, Your Honor, but under the jurisdiction of 1252B5A here, where we have no disputed facts, it is within your purview. And it is kind of the way that Petitioner has set up this case by bringing it at such a late date, even though he could have filed a petition for review off of the original merits decision of the court decision. But now you're talking about timing. I guess I can understand if it was clear either way. So if you thought the Second Circuit is clearly wrong, and the statute simply cannot be read in any reasonable manner other than the BIA read it the first time, we could, I guess, ignore the timeliness and just say this is step one, it goes that way. Or if you thought the Second Circuit is clearly right, there's no other reasonable reading. As the Second Circuit said, we could rule for Petitioner, and you'd have no problem with that because it's a citizenship claim. If he's a citizen, it's clear that he is. He should be entitled to relief. The difficulty is if we thought it wasn't clear one way or the other, normally we'd have a BIA decision. We'd look at its reasoning. We'd see is it a reasonable construction of the statute? Did they do what you're supposed to do under Chevron? We don't have that here. So in that situation, I guess the idea would be we should remand for the BIA to then exercise its decision, at which point we could then review whether it did a good job or not. Well, because this is jurisdiction under 1252B5A, this Court has de novo review, so it would have not mattered what the Court decision would have said. But Chevron still applies in de novo review. Yes, you're correct. So that's the problem. Can we even step in if Chevron's applicable and resolve the ambiguity in the first instance on our own if it's not clear? I'm sorry, could you repeat that? Sure. It just seems odd if we decide that it's ambiguous, and hence we should defer to a BIA interpretation. Why would we ever decide the issue first rather than sending it back to the BIA? I understand the dilemma there, Your Honor. However, the Board decision does reference back to the matter of Nzusuz, so still that is valid law that the Board would rely on. The fact that the motion to reopen denial does not have extensive analysis on it does not negate the fact that that still remains good law that binds the agency and therefore would still remain persuasive in this Court. If we somehow got to the merits on this, wouldn't the question be whether he had to be a lawful permanent resident? That's correct. And so that if he didn't make that, would that not end the case? Yes, Your Honor, that's correct. That's our interpretation of the statute. So that's the government's actual position? Yes. And the information about this filing of the alien relative, the filing they're relying on that's not the filing for the green card, but that's for the objective manifestation of an intention to be a permanent resident, the BIA has never reviewed whether such a document was filed, whether it counts as a document, whether it would be a good enough document, et cetera. Is that right? If we look back to the original Board decision on the merits, it was in fact presented to the immigration judge and therefore also known to the Board at that time. That also touches upon the fact that under the Second Circuit's – But it was irrelevant to the BIA under its ruling because it ruled that an objective manifestation couldn't count. Correct. But we don't have any idea what the BIA would count as an objective manifestation under the Second – if it were now to follow the Second Circuit ruling, we have no guidance from the BIA as to what counts as an objective manifestation, do we? There's no indication that the Board would follow the Second Circuit. Or that it wouldn't. Literally no indication one way or the other. All we know is before the Second Circuit told them you got it dead wrong, they came out one way. Now the Second Circuit has said you got it wrong in all respects. What would the BIA do? How would we know? There's no indication that it would follow the Second Circuit decision just because there is an outstanding Board decision that still remains precedent and binding upon the agency. So especially in the First Circuit, it would not appear that it would then stray and follow an out-of-circuit opinion. So you're saying we do now, in fact, have a BIA determination of what the law is, albeit not in this case, and the mere fact that courts elsewhere might have said something different doesn't divest the prior BIA determination of its – whatever effect and deference it's due. Yes. If I corrected this, and I may well not be, there was an I-817 file as the first document filed by the mother back in 1995. That gave him, I think, 43 months to do something. Yes. And he didn't do that in the 43 months. Is that correct? That's correct, Your Honor. And so what is the result of his not doing that? Does that mean because at the time it was too late for him to file that, the three days between the time his mother was naturalized and he became 18, is that important in this calculus? The bottom line is that, yes, the petitioner never filed and never received lawful permanent resident status, which is what the statute requires. So anything less than that would be insufficient, even this. So it's your position that you have to have lawful permanent status in any event, that all these other cases are incorrect? There is only one other case that – The other. Correct. Why would Congress, if both parents have gone through the naturalization process and become naturalized U.S. citizens, why would Congress want to make it at all complicated for their minor children to become U.S. citizens? Why would they want them to go through the whole rigmarole? I can see why they want an accounting stand-up, say something, manifest their intention, but your argument would apply to a four-year-old here, right? Well, part of that accounting and registering is the lawful permanent resident status. But there are plenty of other ways to make an objective manifestation that I think like U.S. citizens make. There are plenty of ways, but if you look to the Second Circuit's way of deciding anything less than lawful permanent residence, it kind of becomes an unworkable standard because they do not list what is the quantum of evidence needed. And so what meets that threshold becomes a question of fact, and then you have to decide case by case over and over in these courts what is that. So you want a bright – not only want a bright line, but you also want to stand a pretty rigorous bright line. Well, yes, because we're talking about U.S. citizenship here. But we're talking about minors whose parents have become U.S. citizens. That is correct. But that's also due to the history of the statute where it has been wrapped together from two different parts. And so there were regulations or there were standards regarding children that were living abroad at the time the parents were naturalized and children were living here. And so in putting them together, this is how it kind of came about. Even aside from this criminal conviction, which happened after he was 18, you'd be at the same place, wouldn't you, as far as citizenship was concerned? Yes. You would say that he doesn't qualify. Correct. Because he didn't file before he was 18. Correct. Thank you, counsel. Thank you. Thank you. Thank you, Your Honor. Your Honors, what I said earlier about when he filed the I-817 and Judge Stahl, you correctly implicated that he had 43 months to file. However, that was only to file so he could be a green card holder. Well, he could jump that hurdle and now he could just get derivative citizenship because that's the bigger prize, the insurance green card, so he doesn't have to file any other papers after the I-817 once his mother became naturalized. You're saying, I think, that the naturalization of the mother, he thought at that point he was a citizen because his mother was naturalized and he didn't have to do anything. He didn't have to do anything because he was still at the age of 17, and he didn't have to be a green card holder because we now have that law with Mazzuzo v. Holder that the history of the statute where the government does acknowledge that it came from HUSC-7 and then 5 of I-8-1907, they took that and they made it into two clauses. But you have to give some effect to that second clause, which is what reside permanently or permanently reside. I forget which the order is. That is the clause. So what effect are you giving it, just being the child of the? No, that he also had to show, Your Honor, that he did show objective manifestation. And what is the evidence of that? The evidence of that is the fact that there was that earlier filing or what? Earlier filing. So he can stand on that earlier filing. If you're living with the parents and they've already filed showing that they'd like you to be with them, that's enough to count as the objective manifestation? That's the argument? Not even that. He came here lawfully with a B-2 visa. His two sisters became U.S. citizens. His brother became a U.S. citizen. So all indications are he wants to stay. All indications that, of course, he was going to stay here in the United States. How does this work administratively? The naturalized parent, 17-year-old, three years later, the 17-year-old goes to get a job, applies for a Social Security card. How does he prove at that point that he's a citizen? I think what we're hearing from Ms. Chang is that there's this objective test that you can look at and yes or no, as opposed to him just telling that story later on. I stayed here. I did this. I did that. Well, he was never in the position to actually declare citizenship at the time because he never realized that the law applied to him. So now the law applied to him that he was a citizen. Why not affirm it? And he could not have anyone confirm it but the First Circuit here because you have the opportunity to hear the constitutional issue of citizenship. This is the only jurisdiction Mr. Thomas has. The law wasn't available to him when Stephen Day, the immigration judge, said you're not a citizen. There was no law that proved that he was a citizen, so he was deported. Then once the law changed four months later after he was deported, that was his opportunity coming back into the United States and saying, you know what, I am a citizen. The Second Circuit got it right. They analyzed the statute the way Congress was meant for it to be written and understood. If they wanted to say he had to be a lawful permanent resident in both clauses, they would have included it, but they specifically left it out. Thank you. If you're going to file a responsive 28-J letter addressing the nature of the plea, you should do that within 10 days. Thank you, Your Honor. Do I have a minute left? Is it true? No. No? Okay.